**IN THE UNTIED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**MATHEWS, JILL**, an individual,

      Plaintiff,

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY**, a foreign corporation,

      Defendant.

---

### COMPLAINT AND JURY DEMAND

---

COMES NOW, Plaintiff, Jill Mathews, by and through her attorneys, FURTADO LAW PC, for its Complaint against the above-named Defendant American Family Mutual Insurance Company, and states as follows:

### I.  NATURE OF THE ACTION

1.     Ms. Mathews brings this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract, statutory claims pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation, and breach of the covenant of good faith and fair dealing.

### II.  PARTIES

2.     Jill Mathews, ("Plaintiff") is an individual residing in Colorado.

3.      American Family Mutual Insurance Company ("Defendant") is a foreign corporation with its principal place of business located in Wisconsin and is authorized to do business in Colorado.

### III. JURISDICTION AND VENUE

4.      Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. § 1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Ms. Mathews purchased American Family's insurance policy in Colorado, and that insurance policy was intended to provide coverage for a property located in Colorado.

5.      American Family issued a property insurance policy, Policy Number 05DR2773-01, (the "Policy") to Ms. Jill Mathews for her residential property located at 3901 Newland Street, Wheat Ridge, Colorado 80033-4917 (the "Property").

6.      The Policy was entered into in Colorado, and the torts committed by American Family described in this Complaint and Jury Demand, occurred in Colorado.

7.      This Court has personal jurisdiction over American Family under C.R.S. § 13-1-124(1)(a), (b), or (d).

8.      This Court has subject matter jurisdiction over all claims asserted herein.

9.      Venue is proper in this district under C.R.C.P. 98(c), which Plaintiff designates as the place of trial.

### IV. GENERAL ALLEGATIONS

10.     On May 8, 2017, during the Policy's effective period, a hailstorm caused damage to the Property.

11.     The Policy provides insurance coverage for the Property on a replacement cost value basis.

12.     The May 8, 2017 hailstorm caused damage to, among other things, the basement, the roof and gutter system, several interior rooms, covered patio, fence, grill, and fire pit.

13.     Ms. Mathews timely reported the loss to American Family, which American Family designated as Claim Number 0315100925 (the "Claim").

14.     On May 22, 2017, an American Family representative inspected the Property with Ms. Mathews.

15.     American Family determined that there was covered damage only to the gutters, downspouts, dryer vent cover, soffit, doors, screens, deck stain patio paint, fence paint and personal property. American Family estimated Replacement Cost Value at $4,714.45 and issued an Actual Cash Value settlement of $2,476.56 on May 24, 2017.

16.     American Family's estimate did not include payment for damage to the basement.

17.     American Family's estimate did not include any payment for visible damage to the roof.

18.     Ms. Mathews timely disputed American Family's assessment of the damage to the Property.

19.     In June 2017, Ms. Mathews hired Skeet Tomlin with Pivot Adjusters as her public adjuster and Mr. Tomlin sent American Family a letter of representation.

20.     On July 5, 2017, Mr. Tomlin requested that American Family conduct a re-inspection and sent an estimate and photographs showing damages.

21.     American Family denied that request on July 10, 2017.

22. On July 19, 2017, American Family sent Ms. Mathews a letter stating that it would not cover damage to the basement, because they alleged that the water overflowing from the gutters was "groundwater."

23. Per the Merriam-Webster online dictionary, groundwater is "water within the earth especially that supplies wells and springs."

24. The water overflowing from Ms. Mathews' gutters was not groundwater.

25. On July 25, 2017, Mr. Clark Lodge, an adjuster at Pivot Adjusters, sent American Family photographs showing fractures to the roof. He told American Family that he was ordering a forensic inspection. Mr. Lodge requested that American Family take part in this inspection. American Family rejected that request allegedly because they had not received documentation to indicate that there was any further damage.

26. On August 22, 2017, Mr. Tomlin informed Pamela Rozell, an American Family adjuster, that there was moisture in the roof caused by the hail damage to the roof and that the repair methodology suggested by American Family was impossible. Ms. Rozell became upset during the phone call and hung up on Ms. Tomlin.

27. On August 24, 2017, American Family informed Ms. Mathews that it considered the dampness in the roof to have been caused by lack of maintenance.

28. The Policy states:

> 3. Appraisal. This applies after we confirm that the damage due to a loss is covered. If **you** and we fail to agree on the dollar amount of the damage, either may demand that such amount be set by appraisal. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. Each appraiser will separately set the dollar amount of the damage. Such amounts must be determined according to all terms of

this policy Including those in Section I - How **We** Settle Losses. If both appraisers submit written reports to **us** of their agreement of the amount, such amount will be the dollar amount of the damage. If they fail to agree within 20 days, they must choose a competent and disinterested umpire. If they can not agree on the choice within 20 days, **you** or **we** must request that the choice of umpire be made by a judge of a court of record in the jurisdiction where the **residence premises** is located. The appraisers will then submit their differences to the umpire. Written agreement signed by any two of these three will set the dollar amount of the damage. The appraisal determination of the dollar amount of damage Is binding upon you and us. This appraisal process and authority granted to the appraisers and the umpire can only be expanded or modified by written mutual consent signed by **you** and **us. We** will pay **our** appraiser. **You will** pay **your** appraiser. **You** and **we** will pay other expenses and the compensation of the umpire equally. Appraisal, including any part of the appraisal process described above, does not restrict or waive any of **our** rights In this policy.

29.     On September 1, 2017, Ms. Mathews demanded appraisal and named John Robison as her appraiser.

30.     American Family selected Scott Nunnery of Rimkus Consulting Group as its appraiser.

31.     The appraisers selected David Phalen with Solutia Adjusters as the umpire.

32.     The Appraisal Award states that the total RCV amount is $32,561.45, and that the total ACV amount is $28,752.98.

33.     The final appraisal estimate has a contingency line item not included in the total for ISO boarding in the amount of $21,511.93 for adding 4" ISO boarding and to raise the ceiling level of the home by 9", as would be required with the addition of insulation. Under this line item, it states: "It would be reasonable to have something in writing or a quote, name, and phone

number from the building department noting how many additional inches of ISO boarding the are requiring, before releasing funds from this contingency."

34.     The Appraisal Award includes the signatures of John C. Robison and David Phalen, dated March 16, 2018.

35.     The Appraisal Award is binding on both Ms. Mathews and on American Family as it was signed by two of the three panel members.

36.     The Appraisal Award included resulting damage to the basement as the panel determined that damage was proximately caused by the hail storm.

37.     American Family did not pay the ACV or RCV amounts specified the Appraisal Award. Of the $28,752.98 ACV amount in the appraisal award, American Family paid $26,297.30 ($30,106.30 RCV).

38.     American Family issued payment in the amount of $22,821.27 (ACV) on March 30, 2018.

39.     American Family would not issue payment for the roof insulation.

40.     American Family still refuses to issue payment for the roof insulation.

41.     American Family would not issue payment for the basement.

42.     American Family still refuses to issue payment for the basement.

43.     In the letter discussing the appraisal award and ACV payment dated March 30, 2018, American Family informed Ms. Mathews that for the RCV amounts to be released, repairs would have to be completed by May 8, 2018, 39 days after the ACV amount was issued.

44.     Subsequent to the appraisal award, Skeet Tomlin contacted American Family numerous times regarding the contingent line item for insulation.

45.     Mr. Tomlin explained to American Family that insulation would need to be installed.

46.     Pending resolution of the insulation issue, a tarp was placed over the roof as a temporary repair to prevent further damage.

47.     On May 14, 2018, Furtado Law PC sent a letter of representation to American Family.

48.     On June 19, 2018, there was a wind storm that damaged the tarp that was over Ms. Mathews' roof.

49.      On the evening of June 19, 2018, Kyle Larson, a roofer with Elite Custom Builders LLC, visited the Property and confirmed that the tarp was displaced and that a new tarp must be installed to prevent further damage.

50.     Mr. Larson installed the tarp.

51.     On June 20, 2018, Furtado Law PC sent American Family a bill for $1,130.00 from Elite Custom Builders LLC for installing the new tarp.

52.     On June 20, 2018, Furtado Law PC informed Angela Carona, adjuster at American Family, that a City of Wheat Ridge inspector had confirmed, in writing, that insulation would need to be installed in the house per city code.

53.     On June 20, 2018, Furtado Law PC forwarded correspondence from Randy Slusser, Chief Building Official at the City of Wheat Ridge, that states that Ms. Mathews would need to install insulation.

54.     On June 21, 2018, Angela Carona called Furtado Law PC and said that American Family would not pay for the emergency roof tarping; that American Family would not pay for

7

the insulation despite receiving the email correspondence from the Wheat Ridge Chief Building Official saying that insulation was required; and that American Family would not pay for damage to the basement despite it being included in the appraisal award because the water that overflowed from the gutters was "groundwater" and therefore not covered.

55.     On June 21, 2018, Furtado Law PC requested clarification on what provisions in the Policy support American Family's position on the items described in paragraph 52.

56.     On June 27, 2018, American Family sent a letter to Furtado Law PC explaining the status of the claim. That letter enclosed a June 22, 2018 letter supposedly sent to Furtado Law PC in response to the June 21, 2018 correspondence.

57.     That June 22, 2018 letter was never received by Furtado Law PC until it was included in the June 27, 2018 letter.

58.     On information and belief, the June 22, 2018 letter was never sent to Furtado Law PC.

59.     On July 31, 2018, a City of Wheat Ridge inspector visited the property and issued a written notice that: "[i]nsulation found to be insufficient to meet 2012 IECC code requirements. Rating must be R-25 above deck."

60.     The repairs to the Property are underway.

## V.  CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Breach of contract)

61.     Ms. Mathews re-alleges each and every allegation of this Complaint and Jury Demand as if fully set forth herein.

62.     Ms. Mathews and American Family entered into a valid, binding and enforceable insurance contract.

63.     American Family was obligated under the insurance policy to pay for losses and damages to the insured property.

64.     American Family has refused and still refuses to pay for insulation, repairs to the basement, and the emergency tarp repair totaling a $25,097.08 RCV.

65.     The unpaid items are covered benefits under the policy.

66.     American Family refuses to revise its estimate to reflect the actual replacement cost of Ms. Mathews' roof.

67.     The replacement of the roof is a covered benefit under the Policy.

68.     Fixing the basement is a covered benefit under the Policy.

69.     Per the Policy, American Family was bound by the appraisal award.

70.     The emergency repairs to the roof are a covered benefit under the Policy.

71.     American Family's refusal to pay the above items constitutes a breach of the insurance contract and is a breach of the reasonable expectations of the coverage under the policy.

### SECOND CLAIM FOR RELIEF
(Breach of the covenant of good faith and fair dealing)
(Bad faith breach of insurance contract)

72.     Ms. Mathews re-alleges each and every allegation of this Complaint and Jury Demand as if fully set forth herein.

73.     American Family, its representatives, its agents, and its adjusters owed Ms. Mathews the duty to act in good faith and to deal fairly.

74.     American Family owed Ms. Mathews the non-delegable duty to investigate the claim objectively and not just to seek out facts that would allow it to delay or deny benefits rightly owed.

75.     American Family owed Ms. Mathews the duty to give equal consideration to the financial interests of Ms. Mathews and not to place greater weight on its own financial interests while investigating and adjusting Ms. Mathews' claim.

76.     American Family sold Ms. Mathews the Policy intending to provide benefits for the covered losses such as hailstorms that occur within the Policy period.

77.     Ms. Mathews cooperated with American Family in the processing of her Claim.

78.     Ms. Mathews did not fail to mitigate or minimize her damages.

79.     Ms. Mathews cooperated with American Family's investigation and did not obstruct American Family's ability to investigate and adjust the claim.

80.     American Family knew that Ms. Mathews purchased the Policy to protect the Property.

81.     American Family's decision to delay and deny benefits owed to Ms. Mathews was intentional.

82.     American Family knew that it owed an obligation of good faith and fair dealing to Ms. Mathews.

83.     American Family knew that its denial and delay of benefits would cause Ms. Mathews financial hardship.

84.     American Family knew that its denial and delay of benefits would cause Ms. Mathews psychological harm.

85.     Under the Policy's implied covenant of good faith and fair dealing, American Family covenanted that it would deal with Ms. Mathews fairly and honestly, and do nothing to impair, hinder, or injure her rights to benefits under the Policy.

86.     Through the acts and omissions described above, American Family breached the covenant of good faith and fair dealing, as its conduct fell below the applicable common law and industry standards of care, violated the duties of good faith and fair dealing.

### THIRD CLAIM FOR RELIEF
(Violation of C.R.S. § 10-3-1115 and relief under C.R.S. § 10-3-1116)

87.     Ms. Mathews re-alleges each and every allegation of this Complaint and Jury Demand as if fully set forth herein.

88.     Sections 10-3-1115(1) and (2), C.R.S., forbid insurers such as American Family from unreasonably denying or delaying payment of a claim for benefits owed to or on behalf of a first-party claimant.

89.     Ms. Mathews is a "first-party claimant" as that term is used under C.R.S. § 10-3-1115(1)(A)(I) and as is interpreted by the courts of the State of Colorado.

90.     American Family is an entity engaged in the business of insurance.

91.     American Family's refusal to issue full payment as required under the Policy constitutes an unreasonable denial of payment.

92.     American Family denied payment of first-party benefits and did so without a reasonable basis within the meaning of C.R.S. § 10-3-1115.

93.     American Family denied payment of first-party benefits without providing any basis whatsoever.

94.     Section 10-3-1116(1), C.R.S., provides that a first-party claimant whose claim has been unreasonably denied or delayed by an insurer may bring an action to recover reasonable attorneys' fees and court costs and two times the covered benefit that was unreasonably delayed or denied.

95.     As described herein, American Family's actions violate C.R.S. § 10-3-1115.

96.     Ms. Mathews therefore brings this claim to recover damages awardable under C.R.S. § 10-3-1116, separate from and in addition to those remedies and damages available under any other claims for relief.

**WHEREFORE**, Plaintiff, Jill Mathews, requests that the Court enter judgment in her favor and against Defendant American Family and award damages as follows:

1.  The amount of the covered benefits that were denied and unjustly retained by American Family.

2.  Pursuant to C.R.S. § 10-3-1116, two times the amount for the covered benefits that were delayed and denied without a reasonable basis, plus costs and attorney fees;

3.  Costs, expert witness fees, and attorney fees incurred in prosecuting its claims against State Farm;

4.  Pre- and post-judgment interest; and

5.  For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated this 3rd day of August, 2018.

Respectfully submitted,

FURTADO LAW PC


s/ Katherine Goodrich
David J. Furtado
Rodney J. Monheit
Katherine Goodrich
*Attorneys for Plaintiff*

Plaintiff's address:
3901 Newland Street,
Wheat Ridge, Colorado 80033-4917